**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **MAURICIA VAN METER** ) <br> **39755 Hillview Drive** ) <br> **Mechanicsville MD 20659** ) <br>               **Plaintiff** ) <br>           ) <br>       **v.**       ) <br>           ) <br> **UNITED STATES CAPITOL POLICE** ) <br> **119 D Street NE** ) <br> **Washington D.C. 20510** ) <br>              **Defendant** ) <br>           ) | **JURY DEMAND INCLUDED** |

## COMPLAINT

Plaintiff, Private First Class Mauricia Van Meter, brings this civil action against Defendant, United States Capitol Police (USCP). Plaintiff, a fifteen-year veteran Officer on the Capitol Police force, was dismissed from USCP's K-9 unit, during training, because of sex and disability discrimination and/or retaliation.

During the third week of the fourteen-week training course, the training supervisor, Sergeant Phelps, told Plaintiff that he was going to fail her. Phelps then made good on his promise by dismissing Plaintiff from the program in the eleventh week, even though Plaintiff had passed every test and training module up to that point.

### JURISDICTION

1. Plaintiff invokes the jurisdiction of this Court pursuant to the Congressional Accountability Act of 1995 (2 U.S.C. §1408 (a)), as well as 28 U.S.C. § 1331 (Federal Question).

2. This is an action authorized and instituted pursuant to the Congressional Accountability Act, (2 U.S.C. § 1301 *et seq*.).

3. The unlawful employment practices alleged in this Complaint were committed in the District of Columbia.

4. Plaintiff is a current employee of the USCP.

5. Defendant USCP is an "Employing Office" covered by the Congressional Accountability Act (2 U.S.C. § 1301(9)(D)).

6. USCP is headquartered in the District of Columbia.

7. The Congressional Accountability Act makes it unlawful for USCP to discriminate against employees based on, *inter alia*, their sex or disability.  The Act also makes it unlawful for the AOC to "intimidate, take reprisal against, or otherwise discriminate against, any covered employee because the covered employee has opposed any practice made unlawful by [the] Act."

8. Plaintiff has satisfied all administrative and judicial prerequisites to the institution of this action. The Plaintiff filed a timely Request for Counseling before the Office of Compliance raising the violations of the Congressional Accountability Act complained of here.  Plaintiff engaged in the counseling process and filed a timely Request for Mediation at the conclusion of the Counseling Period.  Plaintiff files this suit within the time limits defined by the Act (i.e. after the expiration of 30 days from the end of the Mediation Period, and before the expiration of 90-days, following the receipt of the notices of the termination of the Mediation Period).

## FACTS

9. Plaintiff is a fifteen-year veteran of the USCP.

10. Plaintiff is currently a Private First Class in the USCP.

11. Among her many accomplishments, Plaintiff was the third female firearms instructor

at the USCP.  At the time she was a firearms instructor, Plaintiff was the only female among approximately fifty instructors.

12. USCP has a history of being male-dominated and unwelcome to female officers.

13. For example, USCP only began issuing gender-specific uniforms and body armor within approximately the last ten years.  Prior to that, female officers were required to wear uniforms and body armor designed for the male anatomy.

14. In the fall of 2017, Plaintiff applied for and was accepted into the USCP K-9 Training Program, which trains officers to work specially bred and trained dogs for explosive detection in the U.S. Capitol campus.

15. Currently, of the approximately fifty K-9 officers in USCP, only four are female officers.

16. When USCP purchases K-9 dogs, it does not ensure that the dogs are of suitable size so that either male or female officers can handle them.

17. The K-9 training program is a fourteen-week program, which began in early August 2017.

18. Dogs in the K-9 program are assigned to either be "vapor" dogs – dogs that perform the detection function by patrolling areas for possible explosives carried by people or "static" dogs, which that are used to detect explosives in stationary objects.  It is more difficult (both for the dog and the K-9 Officer candidate) to qualify for the static assignment.

19. The supervisor in charge of USCP's K-9 training was Sergeant Anthony Phelps.

20. Plaintiff's training class began with a total of eight dogs.

21. In Plaintiff's training class, there were four new K-9 Officer candidates, with another

two veteran K-9 officers going through the program to train with new dogs.

22. At the outset of training, Sgt. Phelps declared that two of the available dogs were too large for Plaintiff to handle, leaving only six dogs (at that time) to which Plaintiff could be assigned.

23. Sgt. Phelps assigned Plaintiff to work with a dog whose prospect of successfully completing training was in doubt. The dog ("Jayden") was switched from the "vapor" training to "static" shortly before the dogs were assigned to the Officer candidates.

24. During the third week of the fourteen-week training program, Sgt. Phelps told Plaintiff that he was going to fail her out of the program.

25. Also during the third week of training, Sgt. Phelps assigned Plaintiff to Static training and paired her with "Jayden," who (on information and belief), Sgt. Phelps believed would fail out of the program.

26. Shortly after Sgt. Phelps told Plaintiff he was going to fail her, Phelps' supervisor told Phelps he had heard that Phelps made that threat to Plaintiff and the supervisor counseled Phelps.

27. Phelps blamed Plaintiff for complaining about his discriminatory statement and he chastised Plaintiff for complaining.

28. At the end of the sixth week of training, two dogs failed out of the program, leaving only six dogs available to be paired with the six candidates – meaning that there were no more "reserve" dogs.

29. As of the sixth week of training, Plaintiff was the only candidate paired with a "Static" dog and required to complete static training. The three male candidates were

assigned vapor dogs.

30. During the sixth week of training, Plaintiff advised Phelps that she suffered from anxiety and depression. She asked Sgt. Phelps not to speak in an abusive manner to her.

31. Following Plaintiff's disclosure of her disability to Phelps, he continually derided and belittled her by speaking to her in a condescending manner and sarcastically asking if his tone was appropriate for her.

32. At the conclusion of the eleventh week of training, Plaintiff passed the last training module examination, before the final three weeks of training, which involved more dog/officer team training.

33. Phelps dismissed Plaintiff from the training program at the end of week 11, on or about October 18, 2017, for no valid reason.

34. The dog to which Plaintiff was assigned was reassigned to a male K-9 Officer, who did not suffer from any disability and who had not engaged in protected activity against the USCP.

35. On information and belief, the male officer's dog had been retired from the program unexpectedly and shortly before the time that Sgt. Phelps decided to dismiss Plaintiff from the program.

36. After she was dismissed from the K-9 training, Plaintiff complained internally to an Assistant Chief about Sergeant Phelps' treatment of her, and her lawyer contacted USCP's General Counsel's office to discuss the discriminatory dismissal.  Shortly thereafter, Sgt. Phelps was transferred from the USCP's K-9 training division to a post in the Senate Uniformed Police Division.

37. Within days of transferring out of the K-9 Training division, Sgt. Phelps separated from the USCP.

38. On information and belief, Sergeant Phelps was either terminated or chose to resign or retire in lieu of termination.

39. On information and belief, USCP knew that Sgt. Phelps had a history of discriminating against women in the workplace, but took no remedial action to remove him from a supervisory role.

**COUNT I: DISCRIMINATION BASED ON SEX, DISABILITY AND RETALIATION**

40. Plaintiff repeats and reavers each of the foregoing paragraphs as if they were specifically restated here.

41. Defendant USCP violated the Congressional Accountability Act because it dismissed Plaintiff from the K-9 training program because of her sex, disability and/or in retaliation for her protected activity.

42. As a result of the USCP's unlawful conduct, Plaintiff has suffered substantial economic damages, in the form of lost income, in the approximate amount of $44,000 per year and lost retirement credit and future income.

43. As a result of the USCP's unlawful conduct, Plaintiff has suffered emotional pain and suffering, stress, fear, embarrassment, humiliation, inconvenience and an aggravation of her feelings of depression and anxiety.

**COUNT II: DISPARATE IMPACT DISCRIMINATION BASED ON SEX**

44. Plaintiff repeats and reavers each of the foregoing paragraphs as if they were specifically restated here.

45. Defendant purchases K-9 dogs without regard to their size, which results in the

purchase of large dogs that USCP refuses to assign to work with female K-9 officers and candidates.

46. Defendant leaves the decision to pass or fail a K-9 candidate entirely up to the discretion of the training supervisor (in this case, Sgt. Phelps), with no defined objective standards.

47. Defendant permits the training supervisor (in this case, Sgt. Phelps) to assign candidates to either "static" or "vapor" training, which permits the supervisor to disadvantage groups or individuals that are out of the training officer's favor, including female officers.

48. On information and belief, USCP has not uniformly disciplined male supervisors for engaging in discriminatory conduct toward female officers.

49. USCP's practices and policies (or lack thereof) limit opportunities for female candidates to successfully complete the K-9 training program, including Plaintiff. Defendant's policies resulted in Plaintiff's dismissal from the program.

50. As a result of USCP's practices, of the approximately fifty K-9 Officers on the USCP force, only four of the K-9 officers are female.

51. As a result of USCP's practices, disproportionately fewer female candidates are accepted into the K-9 Officer training program.

52. As a result of USCP's practices, disproportionately fewer female candidates successfully complete the K-9 Officer training program when compared to their male counterparts.

53. As a result of the USCP's unlawful conduct, Plaintiff has suffered substantial economic damages, in the form of lost income, in the approximate amount of $44,000

per year and lost retirement credit and future income.

54. As a result of the USCP's unlawful conduct, Plaintiff has suffered emotional pain and suffering, stress, fear, embarrassment, humiliation, inconvenience and an aggravation of her feelings of depression and anxiety.

WHEREFORE, Plaintiff prays that this Court: (i) declare that the employment practices complained of in this Complaint are unlawful in that they violate the Congressional Accountability Act; (ii) permanently enjoin the Defendant and its agents, officers and employees from engaging in all practices found by this Court to be in violation of the Congressional Accountability Act; (iii) order the Defendant to implement policies that correct the disparate impact that the Defendant's current policies have on women and female candidates; (iv) order the Defendant to make the Plaintiff whole by paying her any monetary damages proved at trial in addition to compensatory damages in an amount to be determined at trial; (v) require Defendant to change its policies and practices so that it purchases K-9 dogs that are of an appropriate size and weight that each dog can be assigned to work with either male or female officers or candidates; (vi) retain jurisdiction over this action to ensure full compliance with the Court's orders and require the Defendant to file such reports as the Court deems necessary to evaluate such compliance; (vii) order the Defendant to pay Plaintiff's costs and expenses and reasonable attorneys' fees in connection with this action; and (viii) grant such other and further relief to the Plaintiff as the Court deems just and proper.

**PLAINTIFF DEMANDS A TRIAL BY JURY**

        Respectfully Submitted,
        ALDERMAN, DEVORSETZ & HORA, PLLC

        Leslie D. Alderman III (D.C. # 477750)
        1025 Connecticut Ave., NW
        Suite 615
        Washington, DC 20036
        Tel: 202-969-8220
        Fax: 202-969-8224
        lalderman@adhlawfirm.com
        Attorney for the Plaintiff