IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____

Mauricia Van Meter,            ) Civil Action
                               ) No. 18-cv-476
              Plaintiff,       )
                               ) Status Conference
vs.                            )
                               ) Washington, DC
^  United States Capitol       ) March 12, 2019
Police,                        ) Time:  10:30 a.m.
                               )
                    Defendant.

_____

Transcript of Status Conference
Held Before
The Honorable Judge Ketanji B. Jackson
United States District Judge

_____

A P P E A R A N C E S

For the Plaintiff:        Leslie D. Alderman, III
                          ALDERMAN, DEVORSETZ & HORA, PLLC
                          1025 Connecticut Avenue, N.W., Suite 615
                          Washington, D.C. 20036
                          (202) 969-8220
                          lalderman@adhlawfirm.com

For the Defendants:       Rafique O. Anderson
                          Kelly M. Scindian
                          UNITED STATES CAPITOL POLICE
                          119 D Street, N.E.
                          Washington, D.C. 20510
                          (202) 593-3336
                          Rafique.Anderson@uscp.gov

_____

Court Reporter:           Nancy J. Meyer
                          Official Court Reporter
                          Registered Professional Reporter
                          Certified Realtime Reporter
                          United States Courthouse, Room 6509
                          333 Constitution Avenue Northwest
                          Washington, DC 20001
                          (202) 354-3118

<u>P R O C E E D I N G S</u>

1  THE DEPUTY CLERK:  Your Honor, this is Civil Action

2  18-476, Mauricia Van Meter vs. United States Capitol Police.

3  I'm going to ask counsel, please approach the podium, state

4  your appearance for the record, introducing the parties at your

5  table.

6  MR. ALDERMAN:  Good morning, Your Honor, Leslie

7  Alderman for Mauricia Van Meter.

8  THE COURT:  Mr. Alderman.  Mr. Alderman.

9  MR. ANDERSON:  Rafique Anderson for the U.S. Capitol

10 Police, and with me I have Kelly Scindian.

11 THE COURT:  Mr. Anderson and Ms. Scindian.

12 The Court has scheduled this conference for the

13 purpose of rendering an oral ruling regarding the pending

14 dispositive motion in this case, which is the partial motion to

15 dismiss the complaint that defendant, U.S. Capitol Police, has

16 filed.

17 The operative complaint in this case is the corrected

18 complaint that plaintiff, Mauricia Van Meter, filed on

19 March 1st of 2018.  This complaint brings claims under the

20 Congressional Accountability Act that allegedly arise from

21 Ms. Van Meter's interactions with her supervisor, Anthony

22 Phelps.  According to the complaint, Phelps oversaw Van Meter's

23 participation in a 14-weeklong K-9 training program at the

24 USCP, and Van Meter contends that she was unlawfully dismissed

1    from the program in Week 11 on the basis of her gender and her

2    disability and in retaliation for her engagement in protected

3    activity.

4          Van Meter's nine-page complaint has two counts.

5    Count 1 claims intentional discrimination, quote, "based on

6    sex, disability, and retaliation," end quote, and Count 2

7    claims, quote, "disparate impact discrimination based on sex,"

8    end quote.  In its partial motion to dismiss, USCP argues that

9    Count 1 should be dismissed as it relates to discrimination

10    based on disability and unlawful retaliation and that Count 2

11    should be dismissed in full.

12          In this oral ruling, the Court will briefly lay out

13    the allegations of fact that appear in the complaint and the

14    related claims before it discusses the applicable legal

15    standards and explains the reasoning behind the Court's

16    conclusions with respect to this motion to dismiss.  I will say

17    now, as a preview, this Court has concluded that the partial

18    motion to dismiss must be granted.

19          The basic facts as alleged in the operative complaint

20    are as follows:  Mauricia Van Meter is a 15-year veteran

21    officer on the Capitol Police force where she is employed as a

22    private first class.  In the fall of 2017, Van Meter allegedly

23    applied for and was accepted into USCP's 14-week K-9 training

24    program which trains officers to work with various specially

25    bred and trained explosive detection dogs.  The supervisor in

1    charge of the USCP training program, which commenced in August

2    of 2017, was Sergeant Anthony Phelps.

3         The complaint alleges that during the third week of

4    the 14-week training program, Phelps told Van Meter he was

5    going to fail her out of the program.  Around this same time,

6    Phelps also allegedly assigned Van Meter to work with the dog

7    who -- according to the complaint, whose prospects of

8    successfully completing training was in doubt.

9         After Phelps communicated his intention to fail

10   Van Meter, Phelps' supervisor allegedly told Phelps that he had

11   heard about the statement Phelps had made to Van Meter, and the

12   supervisor purportedly provided counseling to Phelps.

13   Van Meter alleges in the complaint that Phelps subsequently

14   blamed her for complaining about his, quote, "discriminatory

15   statement," end quote, and that he chastised her for

16   complaining.  The complaint further alleges that during the

17   sixth week of the training program Van Meter told Phelps that,

18   quote, "she suffered from anxiety," end quote, and that she

19   asked him not to speak in an abusive manner to her.

20        The complaint alleges that Phelps continued to,

21   quote, "deride and belittle Van Meter by speaking to her in a

22   condescending manner and sarcastically asking if his tone was

23   appropriate for her," end quote.  Finally, after concluding the

24   11th week of training, during which Van Meter allegedly passed

25   the last training module, Phelps purportedly dismissed

1    Van Meter from the training program.

2         Van Meter's complaint alleges that as a result of

3    this conduct Van Meter has suffered substantial economic

4    damages in the form of lost income, in the approximate amount

5    of $44,000 a year, and lost retirement credit and future

6    income, as well as emotional pain and suffering, stress, fear,

7    embarrassment, humiliation, inconvenience, feelings of

8    depression, and aggravation of her anxiety.

9         As mentioned, Van Meter's complaint alleges two

10   counts against defendant, USCP, the first of which includes

11   three distinct legal claims.  Count 1 alleges discrimination on

12   the basis of sex, discrimination on the basis of disability,

13   and/or retaliation, all in violation of the CAA.  Count 1

14   incorporates the prior factual allegations by reference, but as

15   paragraph 41 indicates, the principal conduct relied upon in

16   that count is Phelps' alleged dismissal of Van Meter from the

17   training program.

18        Count 2 alleges disparate impact on the basis of sex,

19   also in violation of the CAA, and contends that the K-9 program

20   disparately impacts female officers in a variety of ways.  For

21   example, according to the complaint, USCP purchases dogs

22   without regard to their size which results in more large dogs

23   that USCP will then not assign to female officers.  USCP gives

24   training supervisors unchecked discretion which allegedly

25   allows them to disadvantage groups or individuals who are out

1    of the training officer's favor.  USCP both accepts fewer

2    female officers into the K-9 unit and employs practices and

3    policies that, quote, "limit opportunities from female

4    candidates to successfully complete the K-9 program," end

5    quote.  With respect to statistical evidence, only one such

6    statistic is provided.  The complaint says that, quote, "of the

7    approximately 50 K-9 officers on the USCP force, only four are

8    female," end quote.

9         Turning to the procedural history of this matter.

10   Van Meter filed a request for counseling with the Office of

11   Compliance on November 20th, 2017, which was 33 days after her

12   October 18th dismissal from the K-9 training program.

13   Van Meter's request specifically alleged disparate treatment,

14   denial of promotional opportunity, and unfair termination from

15   the K-9 program because of sex, disability, and reprisal in

16   violation of Sections 201 and 207 of the CAA.

17        Then on December 28th, 2017, after the conclusion of

18   the mandatory counseling period, Van Meter filed a request for

19   mediation.  The required mediation period concluded on

20   January 29th, 2018.  Van Meter initiated the instant civil

21   action against the USCP on February 28th, 2018, and filed what

22   she styled as a, quote/unquote, "corrected" complaint the

23   following day on March 1st, 2018.  Defendant USCP filed the

24   instant partial motion to dismiss the amended complaint

25   approximately two months later, on May 10th, 2018.

1          With respect to Count 1, USCP argues that Van Meter

2     fails to state a claim as to disability discrimination because

3     she does not offer any facts, if true, would establish that she

4     has a disability for the purpose of the CAA or that she was

5     actually regarded as having a disability.

6          USCP further argues in regard to Count 1's

7     retaliation claim that Van Meter fails to allege that she

8     suffered a materially adverse action in retaliation for her

9     having engaged in a protected activity.  USCP argues

10    additionally that Van Meter has failed to exhaust

11    administrative remedies with respect to the disparate impact

12    claim that the complaint alleges in Count 2.

13         In deciding USCP's motion to dismiss, this Court has

14    considered both the procedural standards that are applicable to

15    Rule 12 motions to dismiss and the substantive legal standards

16    that govern claims brought under the CAA.  I will now lay out

17    those standards briefly prior to explaining how I applied them

18    to reach my conclusions in this matter.

19         The lawful conduct alleged in Van Meter's complaint

20    is the violation of Sections 201 and 207 of the CAA which are

21    codified at 2 U.S.C. Sections 1311 and 1317.  These statutory

22    protections protect against discrimination and retaliation

23    respectively.  Specifically, under the CAA, the protections of

24    a number of federal remedial statutes that address

25    discrimination including Title VII of the Civil Rights Act of

1    1967 and Title I of the Americans with Disabilities Act are

2    extended to certain legislative branch employees.

3            In particular, Section 1 -- excuse me -- 1311(a)(3)

4    of the CAA states that personnel actions affecting covered

5    employees shall be made free from any discrimination based on

6    disability within the meaning of Sections 102 through 104 of

7    the Americans with Disabilities Act.  Thus, the two essential

8    elements of an ADA claim and, by extension, a CAA disability

9    claim are that the plaintiff suffered an adverse employment

10   action and that the adverse employment action was based on the

11   plaintiff's disability.  In the employment context, it is well

12   established that a plaintiff must allege that she has a

13   disability to state a claim for discrimination based on

14   disability.

15           In addition, the CAA contains an anti-retaliation

16   provision prohibiting intimidation, reprisal, or discrimination

17   against a covered employee because that employee has, quote,

18   "posed a practice made unlawful by the CAA or when that

19   employee has initiated proceedings under the CAA."  To state a

20   claim for retaliation, the plaintiff must show that she engaged

21   in a statutorily protected activity, she suffered a materially

22   adverse action by her employer, and a causal connection existed

23   between the two.

24           Notably, before initiating a discrimination or

25   retaliation lawsuit in federal court, a covered employee must

1    seek counseling by and mediation with the Office of Compliance.

2    After this required counseling and mediation period, the

3    employee may bring a legal action against the employee --

4    employing office alleged to have admitted the violation or in

5    which the violation is alleged to have occurred.

6         USCP has filed a partial motion to dismiss the CAA

7    claims that Van Meter has brought here under two different

8    federal rules, Rule 12(b)(1) and Rule 12(b)(6).  A Rule

9    12(b)(1) motion to dismiss challenges the Court's subject

10   matter jurisdiction.  When a defendant moves under Rule

11   12(b)(1), it is the plaintiff's burden to establish that the

12   Court has jurisdiction by a preponderance of the evidence, and

13   if the plaintiff fails to do so, the Court must dismiss the

14   complaint.  Although the Court grants the plaintiff the

15   benefits of all inferences that can be derived from the facts

16   alleged, the factual allegations receive closer scrutiny in

17   resolving a 12(b)(1) motion than in resolving a 12(b)(6) motion

18   for failure to state a claim.  To that end, the Court may

19   consider materials outside the pleadings in resolving the

20   Rule 12(b)(1) question.

21        Although procedural presuit prerequisites do not

22   always implicate the Court's subject matter jurisdiction, the

23   CAA specifically requires an employee alleging civil rights

24   violations to utilize certain administrative procedures first

25   as noted above, and pursuant to Section 1401 -- sorry --

1  1408(a) of the CAA and as mandated by the D.C. Circuit, an

2  aggrieved employee must complete these administrative

3  requirements before a district court will have subject matter

4  jurisdiction over the employee's claims.

5          Moreover, a plaintiff is required to follow the

6  counseling and mediation procedures independently for each

7  claim on which she seeks relief.  Thus, unlike Title VII, the

8  CAA specifically limits jurisdiction to cases where a plaintiff

9  has timely exhausted administrative remedies and, as with all

10  12(b)(1) challenges, the plaintiff bears the burden of

11  establishing subject matter jurisdiction; bare allegations of

12  exhaustion are insufficient to overcome a Rule 12(b)(1)

13  challenge.

14          By contrast, Rule 12(b)(6) motions test the facially

15  sufficiency of the allegations of the complaint.  And when

16  evaluating a motion to dismiss for failure to state a claim

17  upon which relief can be granted under Rule 12(b)(6), the Court

18  must accept as true all factual allegations of the complaint,

19  and the plaintiff must receive the benefit of all reasonable

20  inferences that can be derived from the facts alleged.

21          A plaintiff bears the responsibility to plead facts

22  that are sufficient to establish a facially plausible claim.

23  This plausibility standard is satisfied when the plaintiff

24  pleads facts that if true would permit the fact-finder to draw

25  the reasonable inference that the defendant is liable for the

1   misconduct alleged.

2          Although a Court's consideration of facts relevant to

3   a motion to dismiss under Rule 12(b)(6) for failure to state a

4   claim is generally limited to the allegations that are made in

5   the claim itself, the Court may also consider documents

6   attached as exhibits or incorporated by reference in the

7   complaint or documents upon which the plaintiff's complaint

8   necessarily relies even if the document is produced not by the

9   plaintiff in the complaint but by the defendant in a motion to

10  dismiss.

11         This Court has reviewed Van Meter's complaint and

12  both parties' submissions with respect to USCP's partial motion

13  to dismiss, and it is prepared to rule on that motion.  As I

14  mentioned at the outset, the Court has concluded that the

15  motion to dismiss some of the claims that Van Meter has brought

16  against USCP, those are Count 1 as it alleges disability

17  discrimination and retaliation and Count 2 in full must be

18  granted.  And I will now state my reasons for reaching this

19  conclusion.

20         First, with respect to discrimination based on

21  disability under the CAA.  As I've already explained, Count 1

22  of Van Meter's complaint alleges that USCP's dismissal of her

23  from the K-9 training program constituted a violation of CAA in

24  three respects:  discrimination based on sex, discrimination

25  based on disability, and retaliation.  USCP's motion does not

1    challenge the complaint's sex discrimination allegation.  With

2    respect to disability discrimination, the two necessary

3    elements are, one, that the plaintiff suffered an adverse

4    employment action, and, two, that the adverse employment action

5    was based on plaintiff's disability.  Moreover and

6    significantly for present purposes, it is well established that

7    in order to state a claim for discrimination based on

8    disability, the plaintiff must allege that she has a

9    disability.

10          Here, Van Meter's complaint fails to allege this

11    crucial fact.  To start, the pleading does not make clear on

12    its face whether Van Meter is alleging that USCP discriminated

13    against her on the basis of an actual disability or on the

14    basis of a disability that USCP perceived that she had.  In

15    fact, the only mention of any disability in the allegations of

16    the complaint is paragraph 30's statement that Van Meter,

17    quote, "advised Phelps that she suffered from anxiety," end

18    quote, and paragraph 31's reference to, quote, "the disclosure

19    of her disability to Phelps," end quote.  Nowhere does

20    Van Meter affirmatively allege she actually suffers from

21    anxiety or any other disability, nor does the complaint allege

22    any facts that would support a reasonable inference that

23    Van Meter has such a disability or that Phelps perceived her to

24    have such a disability.

25          Thus, even assuming that Van Meter's anxiety

1    substantially limited one or more of her major life activities

2    such that it actually constitutes a disability within the

3    meaning of the CAA, the complaint offers no allegations of fact

4    from which a reasonable fact-finder could infer that she has or

5    was perceived to have any such condition.  And having omitted

6    that critical allegation, Van Meter's disability discrimination

7    claim necessarily fails.

8            Van Meter's retaliation claim fares no better because

9    it too lacks crucial allegations of fact.  As this Court

10   outlined earlier, to state a claim for retaliation, the

11   plaintiff must show that, one, she engaged in a statutorily

12   protected activity; two, she suffered a materially adverse

13   action by her employer; and, three, there is a causal

14   connection between the two, but Van Meter's complaint fails to

15   assert that she participated in any protected activity and,

16   therefore, that USCP retaliated against her because of that

17   protected activity.  The complaint offers one conclusory

18   reference to the relevant standard by stating in paragraph 41

19   that, quote, "USCP violated the CAA" -- the Congressional

20   Accountability Act -- "because it dismissed plaintiff from the

21   K-9 training program in retaliation for her protected

22   activity," end quote.

23           There is nothing that identifies what the alleged

24   protected activity is, much less any facts that indicate that

25   Van Meter engaged in opposition to any discriminatory practice,

1    which is what Van Meter attempts to assert in her written

2    opposition related to the nature of the protected activity.

3         To be more specific, nowhere does the complaint

4    allege that Van Meter affirmatively opposed a practice made

5    unlawful by the CAA.  Instead, the complaint indicates merely

6    that, quote, "Phelps' supervisor told Phelps he had heard that

7    Phelps made a threat to plaintiff" and that "Phelps blamed

8    plaintiff for complaining about his," quote/unquote,

9    "'discriminatory statement' and he chastised plaintiff for

10   complaining."  At most, these allegations suggest that Phelps

11   believed Van Meter complained, but it neither confirms that she

12   actually did so, nor establishes that the perceived complaint

13   pertained to activity that the CAA makes unlawful.

14        Courts in this district have long held that in order

15   "to oppose a discriminatory employment practice, plaintiff is

16   required to communicate to his employer that he believes the

17   employer's conduct is, in fact, discriminatory."  There I was

18   quoting from a D.D.C. case from 2011, *Moore v. Office of the*

19   *Architect of the Capitol*, 828 F. Suppl. 2d 254 at 256 to 257.

20   If a plaintiff has failed to allege that she ever communicated

21   to her supervisors that she was opposing what she believed to

22   be discriminatory conduct by them, plaintiff has failed to

23   allege facts sufficient to state a prima facie case of

24   retaliation.

25        Moreover, and importantly, even if a plaintiff can

1  state a retaliation complaint under a perceived opposition

2  theory; that is, based on her employer's belief that she had

3  engaged in a -- in the protected conduct of opposing

4  discriminatory practices, Van Meter's complaint still falls

5  short because it does not allege that Phelps was retaliating

6  against her based on his belief that she had complained about

7  his discriminatory conduct.

8          In both her complaint and her opposition to USCP's

9  motion, Van Meter explains that Phelps told plaintiff that she

10  was going to fail her out of the program, that Phelps'

11  supervisor heard that Phelps made that threat and confronted

12  Phelps about it, and Phelps blamed plaintiff for complaining

13  about his, quote/unquote, "discriminatory statement."  But

14  nothing in the complaint alleges that or supports the inference

15  that the alleged threat was a discriminatory statement.  That

16  is a conclusory allegation that plaintiff includes, but nothing

17  about the circumstances indicates that the threat was

18  discriminatory in nature.  And whether she actually opposed

19  Phelps' conduct or was merely perceived as opposing his

20  conduct, the complaint provides nothing from which one can

21  infer that Phelps perceived her to have opposed a

22  discriminatory practice of his, which is an essential element

23  of the CAA's retaliation claim.

24          Put another way, even if it is true that Phelps

25  believed Van Meter complained to his supervisor that Phelps had

1    told Van Meter that he was going to fail her out of the

2    program, nothing about such a complaint would plainly signal

3    discrimination if true.  Therefore, the complaint fails to

4    allege sufficiently that Van Meter was engaged in or was

5    perceived to have engaged in the protected activity of opposing

6    a discriminatory practice.

7          Plaintiff's failure to state a plausible claim for

8    relief under the CAA for disability discrimination or

9    retaliation means that USCP's motion to dismiss with respect to

10   Count 1 must be granted in regard to those two aspects of that

11   count, and Count 1 will be dismissed without prejudice, insofar

12   as it alleges disability discrimination and retaliation.

13         Turning to Count 2 of plaintiff's complaint,

14   Van Meter raises a disparate impact claim under the CAA.  As

15   this Court previously explained, the CAA specifically limits

16   the Court's jurisdiction to cases where a plaintiff has timely

17   exhausted the remedies.  Such remedies include counseling and

18   mediation in connection with any civil rights claims raised by

19   an employee, and this process is required for each claim on

20   which she seeks relief.

21         Crucially, Van Meter's original request for mediation

22   does not identify a disparate impact claim, and in her

23   opposition at page 10, Van Meter -- Van Meter appears to

24   concede as much.  It only -- the -- the request only specifies

25   claims, quote -- excuse me.  In her opposition at page 10,

1    Van Meter appears to concede as much.  Van Meter, nevertheless,

2    insists that her request for counseling and mediation and in

3    regard to, quote, "disparate treatment, denial of promotional

4    opportunity, and unfair termination from canine program because

5    of sex, disability, and reprisal," end quote, was sufficient to

6    put USCP on notice of her disparate impact claim as well.

7         This Court disagrees.  Disparate treatment and

8    disparate impact are two different legal theories.  And

9    Van Meter's request for mediation at most put USCP on notice of

10   a disparate treatment discrimination claim.  Again, in looking

11   at that request for counseling, she sought counseling and

12   mediation only in regard to, quote, "disparate treatment,

13   denial of promotional opportunity, and unfair termination from

14   the K-9 program."  The Supreme Court has consistently

15   distinguished between disparate treatment and disparate impact

16   claims, and Van Meter was unquestionably required to exhaust

17   both independently, to the extent that she intended to later

18   raise both claims in federal court.  Because Van Meter

19   admittedly failed to do so with respect to her disparate impact

20   claim, this Court lacks jurisdiction to review that claim and

21   must dismiss Count 2 pursuant to Federal Rule of Civil

22   Procedure 12(b)(1).

23        In conclusion, for the reasons that I have given,

24   USCP's partial motion to dismiss is hereby granted.  Count 1 of

25   plaintiff's complaint is dismissed without prejudice with

1    respect to the disability discrimination and retaliation

2    claims, and Count 2 is dismissed without prejudice in its

3    entirety.

4            An order to this effect will be posted following this

5    hearing, and the Court's order will also require a joint

6    proposed schedule for further proceedings in light of this

7    Court's ruling.

8            In past similar circumstances, the Court has seen the

9    parties confer and propose a discovery schedule.  The parties

10   have seen -- excuse me.  The Court has seen the parties confer

11   a proposed period for amendment of the complaint followed by a

12   discovery schedule.  I leave that up to you, but I will be

13   issuing an order that requires you to tell me how you would

14   like to proceed.

15           Is there anything that we need to address today?

16           MR. ALDERMAN:  Your Honor, I -- I understand the

17   ruling with respect to Count 1, and -- and I think that an

18   amendment of the complaint to a large part can address

19   Your Honor's concerns and the reasons for the dismissal.

20           With respect to Count 2, the disparate impact claim,

21   maybe we didn't do a good-enough job of -- of explaining the

22   procedural system at the Office of Compliance, but, you know, a

23   plaintiff first files a request for counseling and then has a

24   counseling session with the counselor.  And the counselor's job

25   during that counseling session is to discuss all the facts and

1    possible claims.

2            And as Ms. Meter's -- Van Meter's affidavit

3    establishes, during the counseling session we discussed the

4    disparate impact issues, the -- the lack of women on the force,

5    the dog issue, and we raised all of those issues in mediation

6    with counsel who -- who are here today, and -- I mean, so I

7    think that we -- we would need to file a request for

8    reconsideration.

9            THE COURT:  You're welcome to do so.  You're welcome

10   to do so.

11           MR. ALDERMAN:  Just to give you the -- the heads-up

12   that that is likely to happen.

13           THE COURT:  All right.  You should factor that into

14   your proposed schedule.

15           MR. ALDERMAN:  Yes, Your Honor.  Thank you.

16           THE COURT:  All right.  Anything from the defendant?

17           MR. ANDERSON:  Excuse me, Your Honor.  Just to be

18   clear, in our proposed schedules are we just going to do the

19   reconsideration briefing schedule or do you -- are you looking

20   for a discovery schedule as well?

21           THE COURT:  Well, I'm looking for you all to think

22   about the ruling, decide how each side would like to proceed

23   and come up with a timing schedule that indicates how you'd

24   like to move forward.

25           MR. ANDERSON:  Okay.

1          THE COURT:  It doesn't have to be as specific as

2    discovery, if, for example, the plaintiff intends to file a

3    motion for reconsideration or amend the complaint or whatever

4    else that -- that requires the Court's action before you can

5    move on to discovery.  You can just give me the part of it that

6    says here's our proposed briefing schedule for the plaintiff's

7    intended motion for reconsideration or whatever, and then I

8    will issue an order incorporating that schedule.  And once

9    that's done, we'll go from there.

10          MR. ANDERSON:  Okay.  Because I just wanted to -- and

11   I'll talk to Mr. Alderman about it as well.  I didn't want the

12   reconsideration and discovery to start at the same time.

13          THE COURT:  Correct.  I mean, that's -- you'll work

14   it out.  Maybe Mr. Alderman has a different view of it, but

15   this is an opportunity for you to think about your respective

16   positions related to this.  I will say ordinarily when the

17   Court is considering a motion to dismiss or a motion for

18   summary judgment or whatever and the ball is in my court, I am

19   amenable to staying discovery to allow for the Court to

20   consider this, but I also have heard requests as to why that

21   shouldn't be the case.  So maybe you want to confer about that

22   and decide what your respective positions are on how discovery

23   should proceed.

24          I've seen joint proposals that actually include both

25   parties' sides of the process because you're not able to reach

1    agreement.  Ideally, you will be able to come up with something

2    that you can both live with, but if you can't, please provide

3    your respective positions and the Court will decide and issue a

4    schedule accordingly.

5              MR. ANDERSON:  Okay.

6              MR. ALDERMAN:  Your Honor, I think that's exactly

7    what we'll -- what will be happening.  I'm guessing that they

8    won't -- the defendant won't want us to start discovery, even

9    though the -- the discovery would be the exact same no

10   matter -- no matter what claims are here.

11             When would you like the proposed schedule?

12             THE COURT:  I will issue an order that incorporates

13   my ruling today and tells you when to get me the proposed

14   schedule.  I'm thinking maybe three weeks from now or something

15   like that.

16             MR. ALDERMAN:  Okay.  We -- we'd be amenable to a

17   short deadline.

18             THE COURT:  A shorter time frame?

19             MR. ALDERMAN:  Yes, ma'am.  Yes, Your Honor.

20             THE COURT:  All right.  I will consider that.

21             Anything else?

22             MR. ANDERSON:  No, Your Honor.

23             MR. ALDERMAN:  No, Your Honor.

24             THE COURT:  All right.  Thank you.

25             (The proceedings were concluded.)

<u>Certificate of Official Court Reporter</u>

I, Nancy J. Meyer, Registered Professional Reporter, Certified Realtime Reporter, do hereby certify that the above and foregoing constitutes a true and accurate transcript of my stenograph notes and is a full, true, and complete transcript of the proceedings to the best of my ability.

Dated this 15th day of March, 2019.

/s/ Nancy J. Meyer
Nancy J. Meyer
Official Court Reporter
Registered Professional Reporter
Certified Realtime Reporter
333 Constitution Avenue Northwest, Room 6509
Washington, D.C. 20001